FILED
United States Court of Appeals
Tenth Circuit

July 12, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROY LYNN WESBERRY,

      Defendant - Appellant.

No. 15-7051
(D.C. No. 6:14-CR-00019-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

Mr. Roy Lynn Wesberry appeals his conviction for bank fraud and

conspiracy to commit bank fraud, arguing that the trial evidence was

insufficient for a finding of guilt, that the district court should have given

his proposed instruction on "advice of counsel," and that the district court

erred in calculating the guideline sentencing range. We affirm the

---

[*]    The Court concludes that oral argument would not materially aid our consideration of the appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). Thus, we have decided the appeal based on the briefs.

    Our order and judgment does not constitute binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value under Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

conviction, but we direct the district court to vacate the sentence and resentence Mr. Wesberry.

## I. Mr. Wesberry committed bank fraud through a nominee loan scheme.

The charges grew out of an alleged scheme involving nominee loans to defraud the First National Bank of Davis. First National was a small-town bank in Davis, Oklahoma that provided banking services to farmers, business owners, and consumers in the Davis area. First National was insured by the Federal Deposit Insurance Corporation and regulated by the Office of the Comptroller of the Currency (OCC).

First National closed on March 11, 2011. By that time, the bank had failed from substantial unpaid loans to Mr. Wesberry, his wife, and their affiliated companies. Although OCC regulations imposed a legal lending limit of $1.2 million to any one customer, Mr. Wesberry, his wife, and their companies owed First National an estimated $9.6 million. This sum, which dwarfed the bank's loan reserves of slightly less than $1 million, caused First National to fail.

The government charged that Mr. Wesberry and First National's President and Chief Executive Officer, W.A. "Dub" Moore, attempted to hide Mr. Wesberry's debts from First National and federal regulators by arranging loans to Mr. Wesberry in others' names. The funds from those loans were used to clear Mr. Wesberry's unpaid loans from First National's

2

records: the individuals and companies who took out the nominee loans were shown in the loan documents as responsible for the loans, but the proceeds of the loans were credited to Mr. Wesberry's account. The nominee loans were made shortly after the OCC's arrival to inspect the bank.

Mr. Wesberry was convicted on four counts of bank fraud and aiding and abetting (in violation of 18 U.S.C. §§ 1344 and 2) and one count of conspiracy to commit bank fraud (in violation of 18 U.S.C. § 1349). Mr. Moore pleaded guilty to bank fraud and testified against Mr. Wesberry. At sentencing, the district court found that (1) the losses caused by the fraud exceeded $2.5 million, requiring an 18-level offense enhancement, and (2) the offense "substantially jeopardized the safety and soundness of a financial institution," triggering a 4-level offense enhancement. *See* U.S.S.G. § 2B1.1(b)(1)(J), (b)(16)(B)(i) (2014). The district court sentenced Mr. Wesberry to concurrent terms of 87 months in prison, which was at the bottom of the guideline range.

## II. The evidence was sufficient to support Mr. Wesberry's conviction on each count.

Mr. Wesberry argues that the government presented insufficient evidence of bank fraud and conspiracy to commit bank fraud. "We review the denial of a motion for judgment of acquittal, and hence the sufficiency of the evidence to support the jury verdict, de novo." *United States v.*

3

*Vernon*, 814 F.3d 1091, 1098-99 (10th Cir.) (internal quotation marks omitted), *petition for cert. filed*, (U.S. May 9, 2016) (No. 15-1368). In engaging in de novo review, we consider the evidence in the light most favorable to the government. *Id.* at 1099. Because a rational trier of fact could have found Mr. Wesberry guilty beyond a reasonable doubt, his challenge fails.

To obtain a conviction for defrauding a financial institution under § 1344(1), the government had to prove three elements:

1. The defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution.

2. The defendant had the intent to defraud a financial institution.

3. The bank involved was federally insured.

*United States v. Bowling*, 619 F.3d 1175, 1181 (10th Cir. 2010). To prove a conspiracy under § 1349, the government had to show that

1. two or more persons agreed to violate the law,

2. the defendant knew the essential objectives of the conspiracy,

3. the defendant knowingly and voluntarily participated in the conspiracy, and

4. the alleged coconspirators were interdependent.

*United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011).

Mr. Wesberry makes four arguments to support his challenge to the jury verdict:

1. Nominee loans are not per se illegal.

4

2.    He participated in the loans at First National's request.

3.    He was "fully transparent" in seeking the loan proceeds.

4.    He did not participate in the nominee loan underlying Court 4.

These arguments lack merit.

First, although nominee loans are not inherently illegal, they can constitute a crime when "used to deceive a financial institution about the true identity of a borrower." *United States v. Waldroop*, 431 F.3d 736, 741 (10th Cir. 2005). When those loans are knowingly used to flout regulations designed to protect a bank's financial integrity, a jury can find an intent to defraud the bank. *United States v. Weidner*, 437 F.3d 1023, 1034 (10th Cir. 2006). There was ample evidence of Mr. Wesberry's agreement to take funds from nominee loans to conceal his remaining debts from OCC regulators and First National.

Second, Mr. Moore's alleged approval of the nominee loans would not excuse Mr. Wesberry's guilt. "It is the financial institution itself—not its officers or agents—that is the victim of the fraud . . . § 1344 proscribes. It follows that bank customers who collude with bank officers to defraud banks may also be held criminally accountable either as principals or as aiders and abettors." *Waldroop*, 431 F.3d at 742 (brackets, ellipsis, and internal quotation marks omitted).

Third, the jury could reasonably conclude that Mr. Wesberry and Mr. Moore had not acted with transparency. Mr. Moore admitted that he and

5

Mr. Wesberry had conspired to pay off Mr. Moore's account overdraft[1] and "get[] his loans current for the regulators." Appellant's App'x Vol. 2, at 363. And Mr. Moore did not inform First National's Board of Directors that the money from the nominee loans was going to Mr. Wesberry; if Mr. Moore had made this disclosure, the Board would not have approved the loans. *Id.* at 382-83.

Mr. Wesberry adds that there was no real deception because the OCC ultimately figured out that he was the real beneficiary of the loans. He points to Mr. Moore's testimony that the proceeds of the loans could be traced from the loan file. *Id.* at 370-71. But Mr. Moore also testified that the loans were made to trick OCC examiners into thinking that Mr. Wesberry's account was not overdrawn and that his loans were current. The OCC discovered the loans only after it obtained an overdraft report reflecting the overnight disappearance of some of the overdrafts on Mr. Wesberry's accounts.

The test for bank fraud is not whether OCC bank examiners were ultimately deceived by the fraudulent scheme, but whether Mr. Wesberry executed or attempted to execute a scheme to conceal his debt through the use of nominee loans. *See United States v. Doke*, 171 F.3d 240, 245 (5th Cir. 1999) (holding that the fact that a bank officer could have discovered

---

[1]  Mr. Moore allowed Mr. Wesberry to overdraft his First National checking account by $1.6 million.

6

the principal's involvement in a nominee loan did not require a reasonable jury to conclude that the principal and nominee had not attempted to conceal that involvement). The evidence was sufficient to satisfy that test.

Finally, Mr. Wesberry argues that there was insufficient evidence to hold him responsible for the nominee loan underlying Count 4. That nominee loan was made to Mr. John Cundiff. Mr. Cundiff testified that he had not met Mr. Wesberry until after obtaining the loan. Mr. Wesberry testified that he did not know Mr. Cundiff and did not direct him to obtain a loan from First National.

The nominee loan to Mr. Cundiff formed part of the scheme or artifice designed to defraud First National. Mr. Cundiff learned of the possibility of a loan through his contact with an individual, Chris Johnson, whom Mr. Wesberry had recruited. Mr. Moore testified that Mr. Cundiff said he had come for a loan at Mr. Wesberry's request.[2] Most of the funds from Mr. Cundiff's loan were credited to the account of a company owned by Mr. Wesberry. Thus, the jury could reasonably infer Mr. Wesberry's

---

[2] Mr. Moore's testimony on this point was equivocal. Mr. Moore initially testified that he had "guess[ed]" that Mr. Wesberry sent Mr. Cundiff to him. Appellant's App'x Vol. 1, at 299-300. Later, Mr. Moore stated that Mr. Cundiff had "said he was coming in in response to Mr. Wesberry's request." *Id.* Vol. 2, at 369. But immediately thereafter Mr. Moore admitted that he could not recall specifically what Mr. Cundiff had said. *Id.*

7

participation in the nominee loan to Mr. Cundiff. In these circumstances, we conclude that the evidence was sufficient for the conviction on Count 4.

## III.   The district court did not err in refusing to give an advice-of-counsel jury instruction.

Mr. Wesberry requested the following advice-of-counsel instruction:

> One element that the government must prove beyond a reasonable doubt is that the defendant had the unlawful intent to Commit Bank Fraud and/or Conspire to Commit Bank Fraud. Evidence that the defendant in good faith followed the advice of counsel would be inconsistent with such an unlawful intent. Unlawful intent has not been proved if the defendant, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably relied on that advice in good faith.

Appellant's App'x Vol. 3, at 900. According to Mr. Wesberry, this instruction should have been given. We reject this challenge.

"A defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in [his] favor." *United States v. Rampton*, 762 F.3d 1152, 1156 (10th Cir. 2014) (internal quotation marks omitted). Ordinarily, we review for abuse of discretion a district court's refusal to give a requested theory-of-defense instruction. *Id.* But when the district court concludes that there was insufficient evidence to justify the instruction, our review is de novo. *Id.*

"In the Tenth Circuit, to establish a good faith reliance on counsel defense, the defendant must show (1) a request for advice of counsel on the

8

legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice." *United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005) (internal quotation marks omitted). The district court declined to give Mr. Wesberry's proposed instruction because it regarded the evidence insufficient on the third element (advice from his counsel that use of the nominee loans would be legal).

Mr. Wesberry argues that he presented sufficient evidence concerning his counsel's advice. The attorney involved did not testify, but Mr. Wesberry points to parts of his own testimony:

Q.   Did you think there was anything wrong [with] this [nominee] loan?

A.   No.

Q.   Did you consult anybody about it?

A.   . . . [W]hen [Mr. Moore] first asked me about the [nominee] loans and I'd went and talked to [accountant] Robert Clark about it, and then we called an attorney from his office and put him on a speaker phone.

Q.   And who was the attorney?

A.   Steve Tolson.

Q.   And what did you tell Mr. Tolson that you were going to do . . . [?]

A.   I told Mr. Tolson my banker wanted me to bring in some friends and do some [nominee] loans, and I just wanted to make sure that everybody was covered in this deal and

9

. . . I didn't know if it would be right or wrong. I was trying to get out of them.

Appellant's App'x Vol. 3, at 635.

Q.    Now, you indicated . . . earlier, that when [Mr. Moore] made this proposal, you went back and you talked to your attorney; is that right?

A.    Yes, sir.

Q.    And when you talked to your attorney, did you reveal everything that you've told . . . the jury about what he said on this?

A.    . . . I told him everything I knew at that point.

Q.    Okay. And what advice did your attorney give you?

MR. WRIGHT [Government's Counsel]: Objection. Hearsay.

THE COURT: Exception?

MR. GOTCHER [Mr. Wesberry's Counsel]: I don't know if there is one on this, Your Honor, so I'll go to the next question.

THE COURT: I'll sustain the objection.

Q.    (BY MR. GOTCHER) Based on his advice, did you then go and do the nominee loans?

A.    Yes, sir.

Q.    And you relied upon his advice to do that?

A.    Yes, sir.

*Id.* at 652-53.

Q.    Did you think there was anything wrong with these nominee loans?

A.    No, sir.

*Id.* at 661.

Mr. Wesberry's testimony was insufficient to demonstrate that his attorney actually advised him the use of the nominee loans was legal. At most, it showed that Mr. Wesberry had relied on advice from his counsel in agreeing to the loans. The problem for Mr. Wesberry is that he never said what his attorney had advised. Under these circumstances, the district court did not err in refusing to give an advice-of-counsel instruction.[3]

## IV.   We remand to the district court for resentencing.

In calculating Mr. Wesberry's guideline range, the district court enhanced the offense level by four levels for "jeopardiz[ing] the safety and soundness of a financial institution." U.S.S.G. § 2B1.1(b)(16)(B)(i) (2014). Mr. Wesberry challenges this ruling on the ground that "the bank was doomed from the overdraft and [other, non-nominee loans] that [Mr.] Moore [had] approved." Appellant's Opening Br. at 26. According to Mr. Wesberry, "the nominee loans . . . did not affect the viability of the bank"

---

[3]   Had the advice-of-counsel instruction been given, the government would likely have sought to call Mr. Tolson to explore the actual advice he gave Mr. Wesberry. Mr. Wesberry suggests that the district court refused the instruction because the court was uncomfortable with an email from Mr. Tolson that might have been presented if he had been called as a rebuttal witness. In the email, Mr. Tolson stated that he had formerly worked in the same law firm with the district judge and that he was going to refer the Wesberrys to that firm. But in a colloquy with the court, Mr. Wesberry's attorney agreed that the portions of the email referring to the district court judge could be redacted. Appellant's App'x Vol. 2, at 558. We fail to discern any reversible error here, particularly because our de novo review convinces us that the district court properly refused the instruction based on insufficient evidence.

11

because they "did not worsen the bank's position." *Id.* at 27-28. We agree and remand for resentencing on this basis.

In addressing Mr. Wesberry's argument, we engage in de novo review of the district court's legal conclusions and clear-error review of the findings. *United States v. Evans*, 782 F.3d 1115, 1117 (10th Cir.) (internal quotation marks omitted), *cert. denied*, __ U.S. __, 136 S. Ct. 171 (2015). "We review de novo the application of a Guidelines enhancement to the extent the defendant asks us to interpret the Guidelines or hold that the facts found by the district court are insufficient as a matter of law to warrant an enhancement." *United States v. Craig*, 808 F.3d 1249, 1259 (10th Cir. 2015) (internal quotation marks omitted).

Section 2B1.1(b)(16)(B)(i) provides a four-level increase if "the offense . . . substantially jeopardized the safety and soundness of a financial institution. . . ." The commentary to § 2B1.1 provides a non-exhaustive list of factors for the court to consider in determining whether the safety and soundness of a financial institution was substantially jeopardized, including whether the financial institution had become insolvent. U.S.S.G. § 2B1.1, cmt. n. 13(A)(i) (2014).

An OCC examiner testified that earlier loans to Mr. Wesberry and his companies—loans that were not nominee loans and were not charged in the indictment—caused First National to fail. Appellant's App'x Vol. 1, at 225-26. The OCC examiner also testified that use of the nominee loans did

12

not affect the viability of First National because the bank would have failed from the prior loans to Mr. Wesberry and his companies:

> Q. . . . Those four [nominee] loans did not affect the viability, or the continuing existence of the bank in and of themselves, did [they]?
>
> A. Those four loans, in and of [themselves] did not better the bank's position, no, [they] did not.
>
> Q. Or worsen it?
>
> A. [They] did not make it worse, either, no, [they] did not.
>
> Q. Okay. Basically it was a sum zero type deal. . . . [Mr.] Moore was doing the loans, but it didn't really matter, did it?
>
> A. The amount that was outgoing as far as combining for legal lending limit purposes was still the same, and he – and I think that was his goal. And, no, he did not alter that at all.

*Id.* at 227-28.

The sentencing enhancement under § 2B1.1(b)(16)(B)(i) is appropriate in circumstances where "*as a result* of the offense, the safety and soundness of a financial institution was substantially jeopardized." U.S.S.G. § 2B1.1, cmt. n. 13(A) (emphasis added). The offense charged here involved the use of nominee loans to defraud First National. The government has not shown that these nominee loans substantially jeopardized the safety and soundness of First National, which failed from the excessive loans it made to Mr. Wesberry rather than the scheme to conceal these loans.

13

Nor does the relevant conduct cited by the government, which involves other nominee loans not charged in the indictment, change this analysis. The government fails to show that the nominee loans, rather than prior loans to Mr. Wesberry and his companies, jeopardized the safety and soundness of First National. Accordingly, the sentencing enhancement was not supported by the evidence.

## V. Disposition

We affirm Mr. Wesberry's conviction, direct the district court to vacate the sentence, and remand to the district court for resentencing.

Entered for the Court


Robert E. Bacharach
Circuit Judge